After a jury-waived trial in the Superior Court, the defendant was convicted of delivering "any drug or article" to her daughter, Samantha Quesnell, a prisoner at the Western Massachusetts Regional Women's Correctional Center (WCC), in violation of G. L. c. 268, § 28. On appeal, the defendant claims the evidence was not sufficient to prove beyond a reasonable doubt that she delivered the drug Suboxone to her daughter at the WCC. We affirm.
Background. We summarize the facts the judge could have found, viewing the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). On March 14, 2015, Erica Whiston, a correction officer at WCC, observed Quesnell acting strangely in the inmate dining area. Quesnell was lethargic, her mouth hung open, and she fell asleep while eating. Whiston reported her observations, prompting her supervisor, John Muscaro, to review the video surveillance tape of Quesnell's visit with her mother, the defendant, earlier that day. After viewing the tape, Muscaro placed Quesnell on "visit watch," so that her visits would take place near a security camera.
Muscaro also listened to two recorded telephone conversations between Quesnell and the defendant. In the first call, on March 13, 2015, Quesnell asked the defendant to bring her "something," and enough of it to last a while. The two discussed emptying powder from capsules into a "tube thing" that came with an electric cigarette. The defendant told Quesnell, "you can put [that thing] somewhere." Quesnell described the medication she received in jail, and told the defendant to bring in some of her own medication. The defendant agreed to bring "some of my ones too," but Quesnell admonished her not to "squish them" together, and explained, "you just open them, they're capsules." In the second conversation, on March 26, 2015, Quesnell told the defendant to "pick that up" at CVS. Ultimately, the defendant explained, "I'm gonna put it on the bottom of him and we can pass it."
The defendant and her infant nephew visited Quesnell at the WCC on April 2, 2015. The surveillance camera recorded their interactions. The recording shows Quesnell and the defendant sitting at a table, with the baby seated on the surface of the table between them. At one point during the visit, the defendant pulled the sleeve of her sweater over her hand and then moved her arm against the baby's leg such that it was hidden from view. Quesnell's hand was also behind the baby and obscured. Later, Quesnell appeared to reach into her pants with her right hand.
On the morning of April 3, 2015-the day after the defendant's visit-WCC inmate Kyonda Eaton asked Quesnell for Suboxone. Quesnell gave Eaton what looked like an orange breath strip placed between two cookies. Eaton dissolved the strip on her tongue, threw up, and was then "sleepy, happy, ... [and] high," an effect that lasted about six hours. That same morning a urine sample was collected from Quesnell. She tested positive for Suboxone, which had not been prescribed for her. The effects of Suboxone include sedation and lethargy. Its "half-life" is between twenty and forty-four hours.
Discussion. When reviewing the sufficiency of the evidence, "we ask whether, viewing the evidence in a light most favorable to the Commonwealth, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (emphasis in original).' " Commonwealth v. Cohen (No. 1), 456 Mass. 94, 120 (2010), quoting from Commonwealth v. Latimore, supra at 677. To establish a violation of G. L. c. 268, § 28, as amended by St. 1979, c. 485, § 42, the Commonwealth must prove that the defendant (1) gave or delivered, (2) "any drug or article," (3) "to a prisoner in any correctional institution," and (4) "did so without the permission of the superintendent." Cf. In the Matter of Taylor, 458 Mass. 1010, 1011 (2010). Our review of the record in this case leads us to conclude that the evidence was sufficient to establish each of these elements beyond a reasonable doubt.
The judge could reasonably have inferred from the recorded telephone conversations that the defendant agreed to provide drugs to Quesnell at the WCC. The defendant conceded as much in closing argument. The defendant argued that, although she may have conspired to deliver drugs to Quesnell, the object of the conspiracy was never achieved because "[t]here never [was] any proof of an actual delivery." We disagree. Eaton testified that she received Suboxone from Quesnell the day after the defendant visited Quesnell. That same day, Quesnell tested positive for Suboxone. This evidence was sufficient to prove that Quesnell possessed Suboxone at the WCC soon after she was visited by the defendant. Further, our review of the video surveillance recording of the defendant's visit with Quesnell on April 2, 2015, leads us to conclude that the judge could reasonably have inferred that the defendant delivered Suboxone to Quesnell during that meeting. Taken together, this evidence, although circumstantial, was sufficient to establish the defendant's guilt beyond a reasonable doubt.[2]
Judgment affirmed.

In light of our conclusion that the evidence was sufficient to prove that the defendant delivered the drug Suboxone to Quesnell at the WCC, we need not address the defendant's argument that the Commonwealth was required to prove that the item delivered was a "drug," not merely an "article."